Argued and submitted March 12, 1986, reversed and remanded to trial court for
further proceedings January 21, 1987

## VOLLERTSEN,
*Petitioner on Review,*

*v.*

## LAMB et ux,
*Respondents on Review.*

(No. A8212-07824; CA A32343; SC S32303)

732 P2d 486

Laurence L. Janke, Portland, argued the cause and filed a
brief for petitioners on review.

No appearance contra.

Michael H. Marcus, Portland, filed a brief *amicus curiae* on behalf of Multnomah County Legal Aid Service, Inc.

Sandra J. Saunders, Portland, filed a brief *amicus curiae* on behalf of Oregon Apartment Association.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

LENT, J.

**LENT, J.**

The general issue is whether all residential landlord and tenant disputes arise either under the Residential Landlord and Tenant Act (RLTA), ORS 91.700 to 91.895, or under a "rental agreement" as that term is used in ORS 12.125, which provides:

"An action arising under a rental agreement or ORS 91.700 to 91.895 shall be commenced within one year."

We hold that they do not. The particular issue is whether this residential landlord's claim against his former tenants for damages for harm to the premises arises under either RLTA or a rental agreement as the term is used in ORS 12.125. We hold that it does not.

## I. *Background*

More than one year after the conduct of which complaint is made occurred, this residential landlord commenced this action against his former tenants.[1] His second claim for relief in his second amended complaint alleged that tenants entered into possession of premises owned by landlord at a certain address on a month-to-month tenancy. Landlord further alleged that when tenants took possession

"the premises were in good condition and repair, but when they surrendered possession there were numerous holes in the wallboard of said premises; a picture window and numerous other windows were broken; numerous doors were missing or destroyed; woodwork was broken, damaged or missing; drawer fronts were damaged; a counter top was burned; light fixtures were broken; a closet headboard was missing and the clothes rod broken out; the laundry room floor was damaged; the bathroom floor was destroyed; and the carpet was filthy. The surrender of the premises in such condition constitutes waste of plaintiff's premises."

Landlord further alleged that the waste was committed

---

[1] In his second amended complaint, landlord set forth two claims for relief. The first was for unpaid rent for the final days of tenants' occupancy. The trial court allowed tenants' motion to dismiss the complaint, which had the effect of dismissing both claims for relief. Neither landlord's single assignment of error on appeal nor his argument under that assignment of error challenged the dismissal of the claim for unpaid rent. Landlord did not mention the rent claim in his petition for review or in oral argument in this court. We do not address whether that claim was governed by ORS 12.125.

"wilfully, maliciously and in deliberate disregard of plaintiff's rights and plaintiff is entitled to recover treble damages * * * under the provisions of ORS 105.805." Landlord also alleged that he was entitled to damages for loss of the reasonable rental value of the premises during the period necessary to repair the above-described harm. The prayer was for the actual cost of repairs or, alternatively, for three times that amount and for the reasonable rental value lost for the time of repair.

The trial court file contains a judgment as follows:

"This matter having come before the court for trial, and defendants having moved to dismiss plaintiff's Second Amended Complaint, and the court having heard argument of counsel,

"NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiff's Second Amended Complaint is dismissed with prejudice. The court specifically finds that ORS 105.805 does not allow for a claim for damages for waste for a month-to-month tenancy, and that the Oregon Residential Landlord Tenant Act is plaintiff's exclusive remedy for the damages alleged. The court further finds that plaintiff's complaint is time barred by ORS 12.125, which establishes a one year limitation for commencement of an action arising under a rental agreement or under the Landlord Tenant Act;

"[A paragraph giving judgment for costs and disbursements to defendants.]"

The trial court file does not contain the motion, and we do not know what exactly was the basis in law advanced by tenants for their successful motion.

Landlord appealed, making but one assignment of error:

"[The trial court] erred in holding that ORS 195.700 [sic] [obviously meaning ORS 91.700] *et seq* is Plaintiff/Appellant's sole and exclusive remedy for damage to rental property by tenants."

Stating that the trial court's holdings that ORS 105.805 does not apply to a month-to-month tenancy and that RLTA was the landlord's exclusive remedy were "not free from doubt," the Court of Appeals affirmed, holding that the claim was barred by ORS 12.125. *Vollertsen v. Lamb*, 75 Or App 606, 706 P2d 1022 (1985). The court reasoned that even if landlord's

claim could be based on a statute not affected by the adoption of RLTA, the claim still arose "under the rental agreement." 75 Or App at 609. The rental agreement "demised the premises" to tenants, said the court, and "that demise, and the specific terms of the agreement, are the necessary foundation for [landlord's] statutory claim for waste." *Id.* Noting that the legislature had enacted ORS 12.125 as part of its 1973 thorough revision of residential landlord and tenant law, the court further opined:

> "The statutory language expresses the legislative intent that all landlord and tenant disputes, both those covered by the Act and those not, be brought to court within one year after they arise."

*Id.*

We have noted above that the record does not contain the motion that led to dismissal in the trial court. The text of the judgment convinces us that the motion must have been made under ORCP 21A.(9), which provides:

> "* * * the following defenses may at the option of the pleader be made by motion to dismiss: * * * (9) that the pleading shows that the action has not been commenced within the time limited by statute. * * *"

For this motion to be well taken under ORS 12.125, the second amended complaint would have to show that the premises let was a "dwelling unit" or that there was a "rental agreement" as those terms are defined in ORS 91.705:

> "* * * * *
>
> "(3)    'Dwelling unit' means a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household. 'Dwelling unit' regarding a person who rents a space for a mobile home, as defined in ORS 91.873, or who rents moorage space for a floating home, as defined in ORS 488.705, but does not rent the home, means the space rented and not the mobile or floating home itself.
>
> "* * * * *
>
> "(11)    'Rental agreement' means all agreements, written or oral, and valid rules and regulations adopted under ORS 91.780 embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises.

"* * * * *."

The second amended complaint does not contain any allegation that would establish that the premises here let was a dwelling unit. Absent something in the second amended complaint to show that the premises was a dwelling unit, the RLTA definition of "rental agreement" is simply not pertinent. Because the second amended complaint does not show that the let premises were subject to RLTA, there is nothing in that pleading to show that ORS 12.125 is the statute of limitation to be applied to landlord's claim for relief.

There is no doubt, therefore, that the trial court erred when it allowed the motion unless the term "rental agreement" as used in ORS 12.125 applies to all lettings of all property and is not confined to rental agreements concerning dwelling units. We shall address that question later in this opinion.

On the record made in the trial court and on the assignment of error made in landlord's brief in the Court of Appeals, that court should have reversed the trial court unless the Court of Appeals could hold that "rental agreement" as used in ORS 12.125 applies to all lettings and not just to those of dwelling units. The Court of Appeals' opinion does not explore that question.

Without more, the case should be sent back to the trial court for further proceedings, but there is more. Landlord's brief in the Court of Appeals states unequivocally that the premises let was a "dwelling" and that the letting was pursuant to a written agreement that use of the premises was limited to "residence." Undoubtedly, it is the position taken by landlord in his brief that led the Court of Appeals to go beyond the confines of the allegations of the second amended complaint in deciding that RLTA was in any way applicable to this tenancy.

To send this case back to the trial court for further proceedings would eventually result in the trial court dealing with landlord's claim for damages for harm to his property on the basis that the property let was a dwelling. Tenants could raise the same legal issues by an affirmative defense that the claim was barred by ORS 12.125. A fair assumption is that the trial court would adhere to its same view, especially so, given

the opinion by the Court of Appeals. The administration of justice is better served, not to mention saving of the expense to the litigants, by this court addressing now the issues posed at the outset of this opinion rather than waiting for this case to wend its way back through the trial and appellate processes.

## II. *Referent of Rental Agreement in ORS 12.125*

■       The Court of Appeals held that all landlord and tenant disputes must be commenced within one year after accrual, whether or not covered by RLTA. This can be so if, but only if, the term "rental agreement" used in ORS 12.125 encompasses agreements for letting of both dwelling units and property not used as dwelling units, such as stores, warehouses, manufacturing plants, etc. Legislative history does not indicate that the legislature had any rental agreements in mind that did not pertain to dwelling units.

In 1973 Senate Bill 159 was introduced. It was modeled after the Uniform Residential Landlord and Tenant Act and was concerned only with residential rentals. It did not contain a limitation like that now found in ORS 12.125. The bill was referred to the Senate Committee on Local Government and Urban Affairs, where the committee decided that the bill should be amended by adding a section, which provided:

> "An action arising under sections 1 to 33 of this Act shall be commenced within one year."

That section was ultimately made section 39 of the bill. The bill passed in the Senate with that amendment. In the House, the bill was referred to the Committee on Local Government and Urban Affairs. That committee recommended amendment to add the words "a rental agreement or" after the word "under" in the section above quoted. There is nothing in the minutes of the committee to indicate that the committee members or any witness believed that the legislators meant any "rental agreement" other than the kind defined in the opening sections of the bill. Unfortunately, however, that definition was not specifically made applicable to the section on limitation of actions. The committee reported the bill back with the suggested amendment, and the House ordered reengrossment of the bill. The editor's summary of the reengrossed bill states, in pertinent part:

"Requires that certain actions arising under Act be commenced within one year."

Of course, that summary is not a part of the bill, but it bears out that no one thought the limitation was concerned with anything other than residential landlord and tenant disputes.

During the process of compilation for inclusion in the Oregon Revised Statutes, Legislative Counsel moved this section to chapter 12, wherein are found the various statutory periods of limitation. Thus was the term "rental agreement" cut loose from its parentage. Had the section been grouped in Oregon Revised Statutes along with the rest of the thorough revision of residential landlord and tenant law, *i.e.,* ORS 91.700 to 91.895, we doubt that anyone would seriously argue that "rental agreement" meant anything other than the definition given in ORS 91.705(11), even though that definition purports to apply only to RLTA. We do not believe that the action of Legislative Counsel in compiling the section in chapter 12 rather than chapter 91 should require us to give the term any meaning other than that found in ORS 91.705(11), which pertains only to the rental of a dwelling unit.

We conclude, therefore, that ORS 12.125 does not govern all landlord and tenant disputes; it does not govern any landlord and tenant dispute other than that concerning a dwelling unit.

The next inquiry is whether it governs all landlord and tenant disputes arising out of the letting of property for residential purposes.

III. *Landlords' Actions for Damage to Residential Property*

A. *Actions for tenants' noncompliance with obligations under RLTA*

RLTA expressly provides for residential tenants' obligations to maintain premises and landlords' remedies for tenants' noncompliance with those obligations. RLTA defines "tenant" as "a person entitled under a *rental agreement* to occupy a *dwelling unit* to the exclusion of others * * *." (Emphasis added.) ORS 91.705(13). "Rental agreement" means "all agreements, written or oral, * * * embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises," ORS 91.705(11), and "dwelling

unit" means "a structure or the part of a structure that is used * * * by two or more persons who maintain a common household." ORS 91.705(3). Entering into a written agreement providing that the rental was "for use as a residence," defendants were "tenants" under these definitions. Therefore, they were bound by the provisions of ORS 91.775:

"The tenant shall:

"(1) Use the parts of the premises including the living room, bedroom, kitchen, bathroom and dining room in a reasonable manner considering the purposes for which they were designed and intended;

"(2) Keep all areas of the premises under control of the tenant in every part as clean, sanitary and free from all accumulations of debris, filth, rubbish and garbage, as the condition of the premises permits;

"(3) Dispose from the dwelling unit all ashes, garbage, rubbish and other waste in a clean and safe manner;

"* * * * *

"(5) Use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances including elevators in the premises;

"(6) Not deliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so;

"* * * * *."

ORS 91.820(5) provides that "[e]xcept as provided in ORS 91.700 to 91.900, the landlord may recover damages * * * for any noncompliance by the tenant with * * * ORS 91.775."

If this landlord's complaint stated ultimate facts sufficient to constitute a claim only under the above statutes, that claim self-evidently arose "under ORS 91.700 to 91.895" and was time barred by ORS 12.125.

B. *Actions for "waste" under ORS 105.805*

■ ORS 105.805 provides for actions based on "waste" of real property as follows:

"If a guardian, conservator or *tenant* in severalty, or in common, for life or *for years* of real property commits waste thereon, any person injured thereby may maintain an action at law against the guardian, conservator or tenant. In the action there may be judgment for treble damages, forfeiture of

the estate of the party committing or permitting the waste and eviction from the property. * * *" (Emphasis added.)

Oregon statutes have contained this provision, essentially unchanged, ever since it was enacted as part of our first civil code. *See* General Laws of Oregon, ch 4, § 334, p 231 (Civ Code) (Deady 1845-1864). While our cases interpreting ORS 105.805 and earlier codifications of this statute have not specifically recognized these origins, it is clear that the statute is modeled on the old English Statute of Marlbridge, 52 Hen III, ch 23 (1267), and the Statute of Gloucester, 6 Edw I, ch 5 (1278). O'Connell, *A Property Act for Oregon,* 30 Or L Rev 1, 49-50 (1950); Restatement of Property § 198, at 808 (1936), *cited in Wilson et ux v. Kruse,* 199 Or 1, 5, 258 P2d 112 (1953). *See also Parrott v. Barney,* 18 F Cas 1249, 1250-51 (CCD Cal 1868)(No. 10,733a); *Camden Trust Co. v. Handle,* 132 NJ Eq 97, 26 A2d 865, 867-68 (1942); *Continental Fuel Co. v. Haden,* 182 Ky 8, 206 SW 8, 12 (1918); 5 Powell, The Law of Real Property ¶ 637, at 56-4 to 56-5 (1986); 93 CJS *Waste* § 3 (1956). We agree with *amicus curiae* Multnomah County Legal Aid Service, Inc. (Legal Aid) that in analyzing the scope of Oregon's statute and, in particular, whether it applies to tenancies from month to month,[2] it is useful to focus on the need addressed by the thirteenth century English statutes.

Before the statutes were enacted, holders of fee simple and fee tail estates had remedies at common law for injury to real property by tenants who took by operation of law and by tenants at will. Three types of life estates came into being by operation of law: tenant in dower, tenant in curtesy, and guardian in chivalry. 5 Powell, *supra,* ¶ 636, at 56-4; 2 Blackstone, Commentaries *282-83. Because these life estates arose "without the specific volition of any person," the persons to whom the property would pass at the end of these estates needed protection against improper conduct by the life tenants. 5 Powell, *supra,* ¶ 637, at 56-4. *See also* 2 Blackstone, *supra,* at *283 (estates of these three types of tenants were

---

[2] Legal Aid and Oregon Apartment Association, the other *amicus,* have also submitted helpful discussion concerning whether a statutory action for "waste" lies only for "voluntary" waste or for "permissive" waste as well. We need not reach that question here. By alleging that "[s]aid acts of waste of defendants were committed wilfully, maliciously and in deliberate disregard of plaintiff's rights," landlord has sufficiently pleaded that the waste was "voluntary" if indeed that is the only kind of waste for which the statutory action will lie.

"created by the law itself, which therefore gave a remedy against them"). "The law thus safeguarded the inheritance against waste at the hands of the particular tenant where it established the particular estate." *Camden Trust Co. v. Handle, supra,* 26 A2d at 867. Owners of fee interests therefore had a cause of action against such tenants for "waste," defined by Blackstone as "a spoil or destruction in houses, gardens, trees, or other corporeal hereditaments, to the disherison of him that hath the remainder or reversion * * *." 2 Blackstone, *supra,* at *281; *see also* 5 Powell, *supra,* ¶ 637, at 56-4; 2 Blackstone, *supra,* at *282-83.[3] Against tenants at will, owners had an action of trespass because voluntary[4] acts of waste were deemed to terminate the right to possession and to entitle the owner to treat the former tenant as a trespasser. *Parrott v. Barney, supra,* 18 F Cas at 1251; *Sparks v. Lead Belt Beer Company,* 337 SW2d 44, 46 (Mo 1960); *Camden Trust Co. v. Handle, supra,* 26 A2d at 867-68; *Moss Point Lumber Co. v. Board of Sup'rs.,* 89 Miss 448, 42 So 290, 292 (1906); *Chalmers v. Smith,* 152 Mass 561, 26 NE 95, 96 (1891).

Whether owners had common law remedies for "waste" against life tenants, tenants for years, and periodic tenants has been debated, but the prevailing view is that such remedies did not exist. Because owners who voluntarily granted lesser estates in land could protect their own interests by the terms of the agreements demising the estates, they were thought neither to need nor to deserve legal protection against "waste".[5] According to Lord Coke, it followed:

---

[3] Blackstone's definition has been used by this court, beginning with *Davenport v. Magoon,* 13 Or 3, 6, 4 P 299 (1884), and most recently in *Lytle v. Payette-Oregon Irr. Dist.,* 175 Or 276, 288, 152 P2d 934 (1944).

[4] *See* n 2, *supra.* The reason for exempting tenants at will from liability for permissive waste was "the uncertain nature of their tenure which would make it a hardship to compel them to go to any expense for repairs." *Moore v. Townshend,* 33 NJ L 284, 301 (1869).

[5] *See Camden Trust Co. v. Handle,* 132 NJ Eq 97, 26 A2d 865, 867 (1944) (citing several authorities); *Warlick v. Great Atlantic & Pacific Tea Co.,* 153 SE 420, 422 (Ga 1930) ("Lessees for life or for years acquired their interest by contract with the owner of the fee, who could have protected himself against loss in this respect."); *Continental Fuel Co. v. Haden,* 182 Ky 8, 206 SW 8, 12 (1918) ("[T]he law would not protect parties who did not take care to protect themselves."); *Moore v. Townshend, supra,* n 4, 33 NJ L at 300 ("[L]essees for life or years * * * came in by the act of the owner who might have provided in his demise against the doing of waste by his lessee, and if he did not, it was his negligence and default."); 2 Blackstone, Commentaries *283 ("[T]he owner of the fee * * * might have provided against the committing of waste by his lessee; and if he did not, it was his own default.").

"* * * against lessees for life or years, there lay no prohibition of waste at the common law, because they came in by the act of the lessor, and he might have provided upon the making of the lease, against waste to be done and he that might and would not provide for himself, the common law would not provide for * * *."

2 Coke, Institutes of the Laws of England 145 (1797). It was "reiterated with scarcely a dissenting voice by numberless writers * * * that prior to the statutes of Marlbridge and Gloucester the common law afforded no affirmative remedy for waste, either by prohibition, forfeiture of estate or action for damages, against a lessee for life or years." Kirchwey, *Liability for Waste,* 8 Colum L Rev 425, 427 (1908). Early in this century, however, Professor Kirchwey disputed Coke's version of history, examining 13th century "waste" cases concerning life tenants, and concluding that "waste" did lie against life tenants at common law and that:

"The effect of the statute [of Marlbridge] was not to limit or define the action of waste, * * * nor yet to extend it to any class of life tenants not previously subject to it, but only to bring the fermor, the new tenant for years, within its operation."

*Id.* at 433. *Compare Moss Point Lumber Co. v. Board of Sup'rs., supra,* 42 So at 306-309 (Whitfield, C.J., concurring), arguing (at 307):

"* * * the true view of the *ancient* common law was that the general principle of the common law made *all* tenants for life and tenants for years liable for waste, and that the statutes * * * were merely *declaratory* of the *ancient* common law, as it existed when those statutes were passed, and only provided more specific remedies against waste * * *." (Emphasis in original.)

Whatever the historical merits of the varying views, Coke's view, that prior to the statutes of Marlbridge and Gloucester owners had no legal protection against waste by life tenants and tenants for years, has dominated interpretations of those statutes' purposes. The statute of Marlbridge was intended to "remedy the inconvenience" to landlords caused by tenants against whom no action would lie, who "took advantage of the ignorance of their landlords, and committed acts of waste with impunity." *Moore v. Townshend,* 33 NJ L 284, 300 (1869). The statute provided:

"Also *fermors,* during their terms, shall not make waste, sale

nor exile of house, woods, and men, nor of anything belonging to the tenements they have to ferm, without special license had by writing of covenant, making mention that they may do it; which things, if they do, and thereof by convict, they shall yield full damage, and shall be punished by amerciament grievously." (Emphasis added.)

52 Hen III, ch 23, § 2 (1267). To expand remedies against tenants committing waste, eleven years later the Statute of Gloucester was enacted, enabling landlords to recover both possession of the wasted estate and treble damages. *Parrott v. Barney, supra,* 18 F Cas at 1250; *Moore v. Townshend, supra,* 33 NJ L at 300. The Statute of Gloucester provided:

"* * * a man from henceforth shall have a writ of waste in the Chancery against him that holdeth by law of England, or otherwise for term of life, or for term of years, or a woman in dower, and he which shall be attained of waste shall lose the thing that he hath wasted, and moreover shall recompense thrice so much as the waste shall be taxed at."

6 Edw. I, ch 5 (1278).

The question before us is whether, in light of the aims of the original statutes that covered "fermors" and "him that holdeth for term of life, or for term of years," our statute which refers to a "tenant * * * for life or for years," ORS 105.805, should be interpreted to cover tenants from month to month. Although the Statutes of Marlbridge and Gloucester used different terms to describe the tenancies they covered, it appears that the Statute of Gloucester merely enumerated the different types of "fermors" rather than expanding the classes of tenants against whom "waste" could lie. 5 Powell, *supra,* ¶ 637, at 56-5; 2 Blackstone, *supra,* at *283 (statutes provided waste should lie against tenants in dower or curtesy and "any farmer or other that holds in any manner for life or years"). Blackstone's assertion that "for above five hundred years past, *all* tenants merely for life, or for *any* less estate, have been punishable * * * for waste," 2 Blackstone, *supra,* at *283, suggests that Oregon's statute was enacted against a background understanding that all voluntarily created tenancies would be subject to the statute.

As we have noted above, the first code of this state was compiled by Deady. His view of the meaning of the statutory terms would seem to be of some interest. In a case

brought in California state court by a landlord for damages for waste against his tenant from year to year, the landlord relied on a California statute nearly identical to our statute. The California statute provided for action against "a * * * tenant in life or years * * * of real property." ORS 105.805 provides for action against a "tenant * * * for life or for years of real property" just as it did when Deady compiled our first code. The case was removed on motion from the California state court to the Circuit Court of the United States. Deady, by then a federal district judge, heard a demurrer in the Circuit Court, in which the issue was whether a tenant from year to year was a "tenant * * * for years" within the meaning of the California statute. In his opinion and decision overruling the demurrer, he wrote: "The statute declares who shall be liable for waste, and to whom." *Parrott v. Barney, supra,* 18 F Cas at 1251. In holding that the tenancy from year to year was a tenancy for years within the meaning of the California statute, he reasoned:

> "But I am satisfied, upon both reason and authority, that the tenancy described in this count is a tenancy for years. All that is necessary to constitute a tenant for years, is, that he have a certain time in the premises, be it for a day or a thousand years. A tenancy from year to year is a tenancy for a definite recurring period, and not at will. During each of such periods it is a tenancy for the time or term of one year. How often it may be renewed and how long continued by such renewal, depends upon the future conduct of the parties, and is, therefore, uncertain. But for the current year — in this case the year of the alleged explosion and waste — these tenants held the premises independent of the will of their landlord. They had a term — a prescribed and certain time in the tenements. They were termors — tenants for a term — a time certain, and not at will. 10 Bac. Abr. 446; 4 Kent, Comm. 111-117; 2 Bl. Comm. 147, notes 12, 13. The defendants being tenants for a year, are within the statute giving the action for waste, and are, therefore, liable to the person aggrieved for waste done or suffered by them during their term."

18 F Cas at 1251.

The case was then tried in the Circuit Court of the United States for the District of California. *Parrott v. Barney,* 18 F Cas 1236, 1 Sawy 423, 2 Abb US 197 (1871). With respect to Judge Deady's ruling on the demurrer, the Circuit Court stated:

"As to the waste on the premises demised to the defendants, I adopt the views expressed by the district judge, in his opinion on the demurrer, and I need not repeat the reasoning here. Case No. 10,773a [Judge Deady's opinion]."

18 F Cas at 1241.

In a treatise published in London, England, in 1829, we find:

"The Statute of Gloucester, cap. 5, says Mr. *Thomas (h)*, which giveth the action of waste against the lessee for life or years (which lay not against them at the common law), speaketh of one that holdeth for term of years in the plural number; and yet it appeareth by the authority of *Littleton (a)*, that although it be a penal law whereby treble damages and the place wasted shall be recovered, yet a tenant for half a year, being within the same mischief, shall be within the same remedy, though it be out of the letter of the law; for *qui haeret in litera, haeret in cortice,* which is an excellent example, whereupon in many like cases a man may settle a certain judgment.

---

"(h) Thomas's Coke 1st Inst. vol i. p. 29.

"(a) Sect. 67."

Elmes, A Practical Treatise on Ecclesiastical and Civil Dilapidations 272-73 (1829).

A London, England, barrister of Lincoln's Inn, publishing in 1894, in a chapter devoted to inquiring whether liability for permissive waste would lie under the Statute of Gloucester, said:

"But as regards tenants from year to year or for longer periods the cases seem to recognize some responsibility in the tenant, derived from Lord Coke's views mentioned above, though the present author believes that there has been no reported case since the sixteenth century in which such responsibility has been the subject of an action directly seeking to enforce it. Thus Lord Mansfield said in *Taylor* v. *Whitehead* (1781), 2 Douglas 745, 'By the Common Law, he who has the use of a thing ought to repair it,' a proposition rather too wide in statement; again in *Ferguson* v. _____ (1797), 2 Esp. 590, 5 R.R. 757, Lord Kenyon held that a tenant from year to year was only bound 'to make fair and tenantable repairs, such as putting in windows and doors that have been broken by him, *so as to prevent w. and decay of the premises.'*

Then Lord Tenterden at Nisi Prius said in *Auworth* v. *Johnson* (1832), 5 C. & P. 239, that such a tenant 'is only bound to keep the house wind and water tight' considering the state of the premises when he took them; and in *Torriano* v. *Young* (1833), 6 ib. 8, Taunton, J., held that 'he is not liable for mere wear and tear of the premises.' Lastly in *Leach* v. *Thomas* (1835), 7 ib. 327, Patteson, J., said: 'As the defendant was tenant from year to year only, he was not bound to do substantial repairs; he was only bound to keep the premises wind and water tight.' And see the remarks of the Judges in *Wise* v. *Metcalfe* (1829), 10 B. & C. 299; 5 Man. & R. 235."

Bewes, The Law of Waste 215-16 (1894).

These treatises show that in applying the Statute of Gloucester, the English courts did not believe that a "term of years" required that the tenant hold for a term of more than a year. Indeed, if Mr. Elmes rightly interpreted the writings of Coke, a term for half a year brought the tenant within the statute. Mr. Bewes found cases that held tenants from year to year liable under the statute even though the waste was merely permissive and not voluntary.

In 1909, an American textwriter, discussing what persons are liable for waste, said:

"At the common law an action for waste would lie against a tenant by curtesy or dower because these estates were created by an act of law, but not against tenants created by contract. Hence in the absence of statutes and at common law tenants for life, or tenants at will, or tenants for a term of years were not liable for permissive waste. By the statute known as the Statute of Marlbridge, 52 Hen. III, c. 23 s. 2, it was enacted that farmers who committed waste of anything belonging to their tenement without express permission in writing shall be responsible in damages to their landlord. And by a later statute known as the Statute of Gloucester, 6 Edw. I, c. 5, a writ of waste was expressly given against the tenant for life, a tenant for years, a tenant for the life of another person and against the assignee of tenants for life and years. In England it has been held that a tenant for one year or even for a half year is within the statutes. *And a tenant for one year and so on from year to year is certainly within this provision,* but a tenant at will or sufferance is not within the statutes and consequently, he is not liable in damages to his landlord for permissive waste." (Emphasis added. Footnotes omitted.)

2 Underhill, A Treatise on the Law of Landlord and Tenant

720 (1909). The emphasized language was supported by a footnote citation to *Doe d. Chadborn v. Green,* 9 Ad. & El. 658.

In a more modern work published in 1986, the author states:

> "The problems that arise in this area involve a less substantial possessory interest. Estates from period to period and estates at will have much in common. The law of waste is an aspect in which they differ. There would be no utility in allowing a tenant at will to be held liable for waste of any type. The owner of the estate, under which such a tenant holds, has adequate protection in an action for trespass, and cannot claim either damages or an injunction on the basis of a claim that waste has been committed or threatened. The estate from period to period, however, resembles the estate for years. No cases have been found applying to an estate from period to period any rule as to waste different from those applied in the same jurisdiction to short estates for years. * * *" (Footnotes omitted.)

5 Powell, *supra,* ¶ 642[2], at 56-32.

There is case law holding periodic tenancies to be tenancies for a term. A New Jersey statute gave a landlord an action for damages for waste against a "tenant for life or years, or for any other term." The court concluded that an action under the statute would lie against a tenant of an oral month-to-month letting, holding that the month-to-month tenancy was a tenancy for a term. *Cruickshank v. Eak,* 33 NJ Super 285, 110 A2d 61 (1954).

In *Moses v. Cooper,* 211 Va 480, 178 SE2d 514 (1971), the issue was whether a tenant from month to month was a tenant for a term. The court held that the defendant was a tenant for a term.

As stated by *amicus curiae* Legal Aid, the Statutes of Marlbridge and Gloucester were "designed to protect a class of holders of reversionary interest whose opponents' interest was created by demise, and was greater than that of a tenant at will." This *amicus* continues:

> "[T]here are strong arguments for, and only formalistic arguments against, a reading of ORS 105.805 as including periodic tenancies, but * * * settled rules of statutory construction suggest excluding such tenancies from the ambit of the statute."

A part of the argument for inclusion is that although a tenant for years is one whose term is definite, however short the term, *i.e.,* down to one month, one week or even one day, the periodic tenant actually has greater security of possession. A tenancy for a specific term terminates at the end of that term and requires no notice by the landlord to support an action for eviction. On the other hand, the periodic tenancy affords the same security of possession for the first period but requires a notice of termination to interrupt the tenant's right of possession after the initial period. As *amicus* states: "In other words, the periodic tenant has the same rights as a term tenant for the first term, and greater rights thereafter."

A month-to-month tenant has a term for a month, and until proper notice has been given by either landlord or tenant to terminate the tenancy, the month-to-month tenant acquires the right to possession of the premises for each succeeding term of one month. We conclude that a month-to-month tenant is a tenant for years within the meaning of ORS 105.805.

C. *Common law actions*

This court has long recognized that a landlord may prosecute civil proceedings for waste without reference to statute. In *Davenport v. Magoon,* 13 Or 3, 4 P 299 (1884), the court affirmed the granting of an injunction to restrain a tenant from tearing down a building on the let premises, holding that an injunction will lie to prevent waste by a tenant. The decision does not rely on any statute. In *Powell v. D.S. & G.R.R.R. Co.,* 16 Or 33, 16 P 863 (1888), the landlord brought an action for damages for waste, among other things. In the discussion of the law pertinent to the claim for damages for waste, this court discussed nothing but the common law; no mention of the statute was made.

Fairly recently in *Johnson v. Northwest Acceptance,* 259 Or 1, 485 P2d 12 (1971), a landlord claimed for damages against an assignee of the tenant for ripping out fixtures, thus harming the realty. The action was described throughout the decision as being for waste. There was no reference in the pleadings to ORS 105.805. *See* Oregon Briefs, vol 1937.

Although not speaking to Oregon law, Judge Deady, in *Parrott v. Barney, supra,* said:

"These ancient statutes [Marlbridge and Gloucester] are a part of the common law, brought to this country by the colonists from England. When the migration to America began, they had been in force in the mother country for four centuries, and were then practically as much a part of the English common law as the oldest traditions of the courts. Com. v. Knowlton, 2 Mass 534; Sackett v. Sackett, 8 Pick. 314; 4 Kent Comm. 81."

18 F Cas at 1250.

We conclude that prior to the enactment of RLTA, a landlord had a common law action for waste against a tenant.

To sum up part III of this opinion, we conclude that a landlord of residential property most certainly had an action for damages for waste both at common law and under ORS 105.805 (and its predecessor statutes) prior to the enactment of RLTA.

The Court of Appeals has suggested that the thorough revision of residential landlord and tenant law by the 1973 Act has at least supplanted the common law action of waste, if not the statutory cause, under ORS 105.805. 75 Or App at 608 n 3. Before addressing the validity of that suggestion, we shall determine what claims for relief this landlord has stated in his second amended complaint.

## IV. *Claims for Relief Stated in this Case*

Although landlord relied in his original complaint on a count for breach of contract for violation of the terms of the written agreement that required the tenant to keep the premises in good condition and repair, as well as a claim that landlord characterized as being for waste, the claim for waste sought to rely on RLTA for an award of attorney fees. Eventually, in the second amended complaint, landlord abandoned any claim for breach of contract and for attorney fees, either under the contract or under RLTA. He did actually state two claims, one for waste and one for damages for loss of rental value during the time necessary to repair the premises, but no point has been made of that. Essentially, the claim has been treated as one for waste. He alleged the amount of actual damages for harm to the realty. His prayer was for those actual damages or, alternatively, for treble damages for voluntary waste under ORS 105.805.

Although landlord, in pursuing this case through three levels of our court system, has sometimes urged that he is proceeding under the common law, and other times has urged that his claim is under ORS 105.805, we believe that it is fair to characterize the claim as being pleaded under the statute. We shall leave to another day whether the common law action for waste by a residential landlord has survived the enactment of RLTA.

The necessary allegations of a claim for waste under the statute have been alleged. The claim stated is not cognizable only under RLTA.

### V. *The Rental Agreement*

■   The Court of Appeals found it unnecessary to rule whether the claim described in ORS 105.805 survived the enactment of RLTA, for that court held that landlord's claims "arise under a rental agreement." 75 Or App at 609. That court held that the rental agreement here created the obligation to pay rent, demised the premises to tenants, and that the demise and the "specific terms of the agreement" are the necessary foundation for landlord's statutory claim for waste.[6] *Id.*

We read the opinion of the Court of Appeals as construing landlord's claim to arise solely under the written rental agreement that was made a part of landlord's brief in the Court of Appeals. We conclude that landlord was here claiming on the duty imposed by ORS 105.805 and not on the specific terms of the written agreement. That statute imposes on a tenant the duty to take proper care of the premises. The terms of the written agreement, although to the same effect, imposed no new obligations on tenants. This court so held in *Winans v. Valentine,* 152 Or 462, 467, 54 P2d 106 (1936). The opinion in *Winans* unfortunately treats the duty of the tenant as if it were an "implied covenant" in a lease. It is not. The nature of the claim is for damages for a tort.

"The nature of the wrongful act or omission for which the remainderman is entitled to recover for waste is a tort: 1

---

[6] There seems to be some circuity in holding that the agreement demised the premises and that the demise *and* the agreement are the foundation of the claim. If the demise is part of the agreement, it should be enough to say that the agreement is the necessary foundation.

Thompson on Real Property, page 848, § 750. The form of the remedy now most commonly used is an action on the case, or the equivalent statutory remedy for the recovery of damages: 1 Thompson on Real Property, page 860, § 764; 1 Tiffany on Real Property (2d Ed.), page 981, § 290; 1 Washburn on Real Property (6th Ed.), page 141, § 306."

*In re Stout's Estate,* 151 Or 411, 423, 50 P2d 768 (1935). "The law of waste can be considered as a part of the law of torts, since it deals with wrongful and actionable conduct and the available remedies for such wrongs." 5 Powell, *supra,* ¶ 636, at 56-2.

Landlord stated in oral argument in this court that he relied solely on the theory of tort and not on any express or implied term of the agreement.

Because we conclude that the cause here pleaded will lie under ORS 105.805, it is unnecessary to determine in this case whether the common law action for waste has survived the enactment of RLTA. Until the legislature may give some stronger signal, however, that it desires by RLTA to abolish all tort actions between residential landlord and tenant, either way, we expect to find claims by either against the other that exist independently of the rental agreement. This one was not pleaded as an attempt to enforce the rental agreement, the claim for waste existed independently of the particular terms of the rental agreement between these parties, and we hold that this claim for relief is not barred by ORS 12.125.

The decisions of the Court of Appeals and the trial court are reversed, and the cause is remanded to the trial court for further proceedings.