212 September 25, 2025 No. 36

IN THE SUPREME COURT OF THE
STATE OF OREGON

Loren HATHAWAY,
on behalf of himself and all others
similarly situated within the state of Oregon;
Gennise Hathaway, on behalf of herself and all others
similarly situated within the state of Oregon; and
Heather Noble, on behalf of herself and all others similarly
situated within the state of Oregon,
*Petitioners on Review,*

*v.*

B & J PROPERTY INVESTMENTS, INC.,
an Oregon corporation;
Better Business Management, Inc., an Oregon corporation
doing business as Salem RV Park; and
William J. Berman, an individual,
*Respondents on Review.*

(CC 13C14321) (CA A169427) (SC S070651)

On review from the Court of Appeals.*

Argued and submitted November 7, 2024.

Rick Klingbeil, Rick Klingbeil, PC, Portland, argued the cause and filed the briefs for petitioners on review.

Matthew J. Kalmanson, Hart, Wagner, LLP, Portland, argued the cause and filed the brief for respondents on review. Also on the brief was Janet M. Schroer.

David E. Smith, Spooner, Staggs Trial Lawyers, Salem, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih, Justices, and Aoyagi, Judge, Justice pro tempore.**

_____

  * Appeal from Marion County Circuit Court, Dennis J. Graves, Judge (General Judgment) and Donald Donald D. Abar, Judge (Supplemental Judgment). 325 Or App 648, 531 P3d 152 (2023).

  ** Bushong, J., did not participate in the consideration or decision of this case.

GARRETT, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.**

This case requires us to decide whether ORS 12.125, which provides a one-year statute of limitations for claims arising under the Oregon Residential Landlord Tenant Act (ORLTA), incorporates a discovery rule that tolls the limitations period until a tenant knew or reasonably should have known of the facts giving rise to a claim. Plaintiffs, residents of Salem RV Park, brought this action alleging that the park's utility billing practices violated certain provisions of the ORLTA. Plaintiffs argued to the trial court that ORS 12.125 incorporates a discovery rule and urged the trial court to certify a class over a period of 10 years preceding the filing of the complaint. The trial court agreed and certified a 10-year class for plaintiffs' claims under the ORLTA. The Court of Appeals reversed, holding that a discovery rule does not apply to ORS 12.125. *Hathaway v. B & J Property Investments, Inc.*, 325 Or App 648, 663, 531 P3d 152 (2023). We allowed plaintiffs' petition for review and now affirm the decision of the Court of Appeals.

## I.   BACKGROUND

The underlying facts are set out in detail in the Court of Appeals opinion, which addressed multiple issues. Only one of those issues, however, is before this court on review. Accordingly, we summarize the facts only as necessary to provide context for our analysis.

Plaintiffs are former and current residents of Salem RV Park. In 2013, they filed this class action against defendants, the owners and managers of the park, alleging that the park's utility billing practices violated ORS 90.315 (2011) of the ORLTA.[1] Specifically, plaintiffs alleged that defendants had violated the statute by routinely charging the park's residents for electricity at higher rates than the actual cost of the electricity and had improperly assessed "meter reading" fees. Shortly after filing their complaint, plaintiffs moved the trial court to certify a class consisting of any person who had been subject to such charges during the 10-year period preceding the filing of the action.

---

[1] Plaintiffs also brought claims for violation of Oregon's Unlawful Trade Practices Act, retaliation, and financial abuse of elderly persons. Those claims are not before us on review.

Plaintiffs' claims under the ORLTA are, undisputedly, subject to the one-year statute of limitations in ORS 12.125 ("An action arising under a rental agreement or ORS chapter 90 shall be commenced within one year."). Plaintiffs commenced this action in April 2013. Accordingly, defendants took the position before the trial court that the class could not include any plaintiff for whom the alleged violation had occurred earlier than April 2012. Plaintiffs responded that a 10-year class period was appropriate because, in plaintiffs' view, ORS 12.125 contains a "discovery rule," meaning that the one-year limitations period does not begin running until a person knows or reasonably should know of the facts giving rise to a claim. Thus, plaintiffs argued, the class should consist of anyone who did not have (and could not reasonably have had) such knowledge more than one year before the filing of the complaint, subject only to the 10-year statute of ultimate repose.

Over the objection of defendants, who argued that ORS 12.125 contains no discovery rule, the trial court agreed with plaintiffs and, after determining that the criteria for class certification had been met, defined the certified class to include

> "any tenant of Salem RV Park, who paid for electricity or a meter reading charge for electricity, during the 10 years immediately prior to the filing of the complaint *** and such person did not or should not have discovered the facts giving rise to the ORLTA Claims, within one year prior to filing the complaint."

As the litigation proceeded, the trial court eventually resolved the issue of liability through a series of partial summary judgment rulings, holding defendants liable to plaintiffs for violations of the ORLTA, and awarded plaintiffs nearly $5 million in damages. The trial court entered a general judgment against all three defendants on plaintiffs' claims. Over the next year, litigation over attorney fees and costs ultimately resulted in entry of a supplemental judgment awarding plaintiffs nearly $1 million in fees.

Defendants appealed from the trial court's general and supplemental judgments, raising several assignments of error arising from class certification, summary judgment

rulings, and the attorney fee award. As relevant here, in their second assignment of error, defendants argued that the trial court erred in ruling that a discovery rule applied to plaintiffs' ORLTA claims and certifying a 10-year class. The Court of Appeals agreed with defendants on that question, concluding that ORS 12.125 imposes a one-year statute of limitations that is not subject to a plaintiff's discovery of the facts giving rise to a claim. Plaintiffs requested, and we allowed, review of that issue of statutory interpretation.[2]

## II.   ANALYSIS

The discovery rule is "a rule of interpretation of statutes of limitation that has the effect of tolling the commencement of such statutes under certain circumstances." *Rice v. Rabb*, 354 Or 721, 725, 320 P3d 554 (2014) (internal quotation marks omitted). A limitations period with a discovery rule is deemed to have commenced from the earlier of two possible events: "(1) the date of the plaintiff's actual discovery of injury; or (2) the date when a person exercising reasonable care should have discovered the injury, including learning facts that an inquiry would have disclosed." *Id.* (internal quotation marks and emphases omitted).

"The existence of a discovery rule cannot be assumed, but rather must be embodied in the applicable statute of limitations." *Id.* at 726; *see also Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 230, 26 P3d 817 (2001). "Thus, we apply the statutory methodology established in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to determine whether the legislature intended to incorporate a discovery rule in the pertinent statute of limitations." *Rice*, 354 Or at 726.

We begin with the text. ORS 12.125 provides that "[a]n action arising under a rental agreement or ORS chapter 90 shall be commenced within one year." The question is, "within one year" of what? Plaintiffs argue that the cause of

---

[2] Defendants filed a separate petition for review raising issues related to the trial court's rulings on summary judgment. We denied review of defendants' petition. Nonetheless, in their opening brief in this case, defendants urged us to consider the issues raised in their petition. Plaintiffs filed a motion to strike those portions of defendants' brief related to the issues raised in defendants' petition, and we granted that motion. Thus, the sole issue on review is whether ORS 12.125 incorporates a discovery rule.

action must be filed within one year of the discovery of the claim, while defendants argue that filing must occur within one year of the alleged violation.

Unlike some other statutes of limitation, ORS 12.125 contains no *express* discovery provision. *Compare* ORS 12.125, *with* ORS 12.110(4) ("An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years *from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered.*" (Emphasis added.)); *see also* ORS 12.274; ORS 12.280. We have explained that "the absence of an express discovery provision in [the applicable statute of limitations] is not dispositive." *Rice*, 354 Or at 730. Instead, we proceed to examine the text in context, as well as any useful legislative history, to determine whether, despite the lack of an express discovery provision, a discovery rule is nonetheless "embodied" in ORS 12.125. *Id.* at 726.

In arguing that the legislature intended for ORS 12.125 to have a discovery rule, plaintiffs make two interrelated contentions, one textual and one contextual. The first contention is that the statute contains a discovery rule through its use of the word "arising." That argument is not persuasive, for reasons the Court of Appeals correctly identified. In context, the most natural reading of the statute is that the phrase "[a]n action arising under a rental agreement or ORS chapter 90" operates as a subject matter limitation, not a temporal one. That is, the statute describes the universe of claims to which the one-year limitations period applies, and that universe consists of claims that arise under a rental agreement or ORS chapter 90, as opposed to claims arising under some other source of law.

Plaintiffs assert that the legislature could have chosen other terms to express that rule, such as "[a]n action *brought under* a rental agreement," "[a]n action *originating under* a rental agreement," "[a]n action *occurring under* a rental agreement," or "[a]n action *initiated under* a rental agreement." (Emphases in original.) That is true, but plaintiffs do not explain why, as a textual matter, "arising under" has any different meaning than those alternatives. And it

does not. The ordinary meaning of "arise," as used here, is "to originate from a specified source." *Webster's Third New Int'l Dictionary* 117 (unabridged ed 2002); *see also Waldner v. Stephens*, 345 Or 526, 540, 200 P3d 556 (2008) ("Combining the ordinary meaning of 'arise' ('to originate from a specified source,' 'to come into being') and 'under' ('in accordance with'), we think that the phrase 'action arising under a rental agreement or [the ORLTA]' is most naturally read as applying when the action itself is authorized by, or brought in accordance with, one of those two sources." (Footnotes and emphasis omitted.)).

Plaintiffs also point out that the legislature has used the same word—"arising"—in six other statutes of limitation in ORS chapter 12, each of which contains a discovery rule. *See* ORS 12.110(4) (action "arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered"); ORS 12.110(5) (action "arising" from a nuclear incident must be brought "[w]ithin two years from the time an injured person discovers or reasonably could have discovered the injury and the causal connection between the injury and the nuclear incident"); ORS 12.132 (action "arising out of" real estate appraisal activity must be commenced (among other things) within two years of "the date on which the person commencing the action knew or should have known the facts on which the action is based"); ORS 12.137 (action "arising from" a nuclear incident must be commenced within "two years from the time an injured person discovers or reasonably could have discovered the injury to property and the causal connection between the injury and the nuclear incident"); ORS 12.274 (action against the trustee of an express trust "arising from" any act or omission of the trustee constituting a breach of duty "shall be commenced within six years from the date the act or omission is discovered or in the exercise of reasonable diligence should have been discovered"); ORS 12.280 (an action "arising out of" the survey of real property must be commenced "within two years after the date the injury or damage is first discovered or in the exercise of reasonable care should have been discovered").

From those other statutes, plaintiffs appear to draw the inference that the legislature associates the word "arising" with a discovery rule, so that we should understand ORS 12.125 to embody that rule even though it is otherwise silent on the question. But the statutes on which plaintiffs rely cut entirely the other way. The fact that the legislature has used phrases such as "arising from" and "arising out of" in multiple statutes that *expressly* contain discovery rules indicates, if anything, that the legislature does *not* associate a discovery rule with the word "arising" itself. Rather, those statutes suggest that the legislature intends the phrase "arising under," when used in a statute of limitations, in the manner described above—as a subject matter description— and has deliberately added discovery rules as it deems appropriate.

In short, to the extent that plaintiffs argue that the text of ORS 12.125 itself unambiguously reflects a discovery rule, that argument is unconvincing. However, plaintiffs and *amicus curiae* Oregon Trial Lawyers Association advance a related contextual argument that, as the Court of Appeals recognized, presents a closer question.

That contextual argument relies on the fact that the relevant statute of limitations, ORS 12.125, is found in ORS chapter 12. A separate provision, ORS 12.010, states that "[a]ctions shall only be commenced within the periods prescribed in *this chapter*, after the cause of action shall have *accrued*, except where a different limitation is prescribed by statute." (Emphases added.) Plaintiffs contend that, under our decision in *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), a cause of action "accrues" when the plaintiff discovers or should have discovered the claim. Plaintiffs further rely on *Rice*, where this court, drawing on *Berry*, explained that statutes "under the purview of ORS 12.010" contain a discovery rule. In plaintiffs' view, ORS 12.125 falls "under the purview of ORS 12.010" because of its location within ORS chapter 12. As we will explain, the Court of Appeals correctly rejected that argument.

We begin with this court's decision in *Berry*, which concerned the two-year statute of limitations in ORS 12.110(1) for actions in tort. Just two years earlier, this court

had held that, for medical malpractice claims, the two-year period begins to run upon the occurrence of the malpractice rather than upon its discovery. *Vaughn v. Langmack*, 236 Or 542, 390 P2d 142 (1964). In so concluding, we relied on the fact that, within that same statute, the legislature had expressly provided that, "in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." Because no similar discovery rule had been included for other types of claims covered by the statute, we reasoned that the omission reflected an intentional choice.

We reversed course two years later in *Berry*, faulting the *Vaughn* majority for placing "too much emphasis * * * upon legislative intent as deduced from the statutory history and not enough * * * upon legislative intent as determined from the ordinary legal meaning of the word 'accrued.'" 245 Or at 309-10. We construed that term within the meaning of ORS 12.010 as follows:

> "The word 'accrue' is derived from the Latin 'ad' and 'creso' to grow to. When applied to independent or original demands it means to arise, to happen, to come into force or existence. When used with reference to a cause of action it means when an action may be maintained thereon. It accrues whenever one person may sue another. The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic."

*Id.* at 311-12 (internal citation and emphasis omitted). We opined that, in the absence of a statutory direction that the limitation period begins running before a person could know of the claim, "to ascribe to the legislature any such intention by their use of the word 'accrue' seems to us unreasonable." *Id.* at 312.

We also looked to the purpose of the statutory limitations period, noting that, in malpractice cases, the goal was to protect "medical practitioners from the assertion of stale claims" and to remedy any "delay in the assertion of

a legal right by one who had slumbered for the statutory period during which process was within his reach." *Id*. at 312-13. Even with that purpose in mind, we did not believe that "the legislature intended to limit patients asserting malpractice claims, who by the very nature of the treatment had no way of immediately ascertaining their injury, to the same overall period of time that is allowed for bringing other tort actions that are normally immediately ascertainable upon commission of the wrong." *Id*. at 312. "The protection of the medical profession from stale claims," we explained, "does not require such a harsh rule." *Id*. Accordingly, we determined that the plaintiff's malpractice claim accrued "at the time [the] plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by [the] defendant." *Id*. at 316.

Since deciding *Berry*, this court has held that a discovery rule applies to other types of tort claims. Our most recent treatment of the issue was in *Rice*, where we held that a discovery rule applies to the six-year statute of limitations in ORS 12.080(4) for claims for conversion and replevin. Because *Rice* is central to plaintiffs' argument on review, we discuss that case in detail.

In *Rice*, we observed that the relevant statute of limitations was silent as to a discovery rule. 354 Or at 726-28; *see id*. at 721 n 5 (stating that "'[a]n action for taking, detaining or injuring personal property, including an action for the specific recovery thereof *** shall be commenced within six years'" (quoting ORS 12.080(4)). The plaintiff pointed to ORS 12.010, which, as already noted, states that "[a]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued." The plaintiff contended that, when ORS 12.010 and ORS 12.080(4) were considered together, the relevant question reduced to when a cause of action "accrues"—and, the plaintiff argued, this court had answered that very question in *Berry*. We agreed, concluding that "a cause of action under ORS 12.080(4) 'accrue[s]' within the meaning of ORS 12.010, 'at the time [a] plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by [a] defendant.'" *Id*. at 728 (quoting *Berry*, 245 Or at 316).

In rejecting the defendant's argument that ORS 12.080(4) should be construed not to contain a discovery rule because it does not expressly provide for one, this court in *Rice* cited several previous decisions that had applied a discovery rule to various statutes that, by their own terms, were silent on the question. *Id.* at 730. We emphasized that, in such cases, we had "generally been persuaded by the fact that the applicable statute of limitations fell under the purview of ORS 12.010." *Id.* We further noted that, in cases where this court had declined to infer a discovery rule, that was because the statute of limitations at issue used a term other than "accrue" to describe when the action commenced. *Id.* (quoting *Gladhart*, 332 Or 226; *Huff v. Great Western Seed Co.*, 322 Or 457, 460, 909 P2d 858 (1996); *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 855 P2d 626 (1993)). We concluded that, unlike those cases, "the limitation clause at issue does fall under the purview of ORS 12.010." *Id.* at 731. And, because ORS 12.010 refers to when the cause of action has "accrued"—and because *Berry* had held that an action does not accrue until it is discovered—it followed that ORS 12.080(4) contained a discovery rule.

From *Rice* and *Berry*, plaintiffs draw a categorical rule that any statute of limitations set out in ORS chapter 12, unless it specifies otherwise, is triggered only when the claim "accrues," and that claims "accrue" only when they are or should have been discovered. Although those cases may at first blush appear to support such a reading, a closer examination of this court's case law, considered together with the history of the particular statute at issue here, compels a different conclusion.

*Rice* did not explain what it meant in referring to whether a statute of limitations falls "under the purview of ORS 12.010." As already noted, that statute provides that "[a]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."

By referring to statutes of limitation falling "under the purview" of ORS 12.010, this court in *Rice* presumably had in mind that statute's reference to "periods prescribed

in this chapter," that is, ORS chapter 12. That understanding tracks the analysis in *Berry*, in which this court reasoned that the statute of limitations in ORS 12.110(4) had to be interpreted in conjunction with ORS 12.010.

It does not necessarily follow from the facts or the reasoning in those cases, however, that *every* limitations period found in ORS chapter 12 is subject to ORS 12.010. Put another way, the accrual rule stated in ORS 12.010 only applies to "periods prescribed in" ORS chapter 12. But the converse is not true: not all periods set out in ORS chapter 12 are necessarily subject to ORS 12.010. That is so because the presence of a limitations period in ORS chapter 12 does not necessarily reflect a *legislative* decision to put it there. As explained further below, sometimes, where statutes are found within the ORS reflects organizational decisions by the Office of Legislative Counsel.

As *Rice* noted, "[t]he existence of a discovery rule cannot be assumed, but rather must be embodied in the applicable statute of limitations." 354 Or at 726. That is, a court must be able to infer from available textual or contextual evidence that the legislature intended for a statute of limitations to embody a discovery rule. Plaintiffs and OTLA contend that the fact that a limitation period is located within ORS chapter 12 is all the contextual evidence that is required to infer that the legislature intended for that statute to be encompassed by ORS 12.010. However, if a statute of limitations was placed in ORS chapter 12 other than by deliberate legislative choice, then we cannot attribute any significance to its existence there as opposed to a different chapter.

The task of codifying and publishing new laws in the ORS belongs to the Office of Legislative Counsel, which has authority to "[r]enumber" or "[r]earrange sections" provided such changes do "not alter the sense, meaning, effect or substance of any Act." ORS 173.160. Thus, the organization and numbering of Oregon statutes does not inherently bear on their "sense, meaning, effect or substance." Moreover, although the legislature may specify, when enacting a statute, that the new law shall be made part of an existing statute or chapter, the legislature does not always do so. Thus,

the fact that a particular statute is found within a particular ORS chapter *may*, but does not *necessarily*, reflect a conscious decision by the lawmakers who passed the bill. Alternatively, it may simply reflect an administrative action by Legislative Counsel.

The statute at issue in this case illustrates that fact, as previously discussed by this court in *Vollertsen v. Lamb*, 302 Or 489, 496, 732 P2d 486 (1987) (so explaining). ORS 12.125 was enacted in 1973 as part of Senate Bill (SB) 159, which created Oregon's Residential Landlord Tenant Act. As originally proposed, SB 159 did not contain a statute of limitations. The Senate amended the bill to add what became section 39, providing that "[a]n action arising under sections 1 to 35 of this Act shall be commenced within one year." *See* Exhibit 1, Senate Local Government & Urban Affairs Committee, SB 159, Mar 26, 1973 (memorandum and adopted amendments to SB 159). A House amendment extended that provision to cover actions under a rental agreement in addition to actions under the ORLTA. *See* Minutes, House Local Government & Urban Affairs Committee, SB 159, June 1, 1973, 4-5 (adopting proposed amendments dated May 18, 1973). In its final form, section 39 stated, "An action arising under a rental agreement or sections 1 to 33 of this Act shall be commenced within one year." Or Laws 1973, ch 559, § 39.

The legislative history contains some information regarding the addition of section 39. In a written explanation of the bill, section 39 was described as "impos[ing] a short (1 year) statute of limitation on landlord-tenant disputes. This was added at the suggestion of Senator John Burns and will prevent landlords and tenants from dragging out ancient history in a dispute between them." Explanation of Engrossed SB 159, House Local Government & Urban Affairs Committee, SB 159, May 18, 1973, 8.

The legislature did not specify that section 39 should be added to or made part of any existing statute or chapter. After the bill's passage, as part of the compilation process for inclusion in the ORS, the Office of Legislative Counsel codified section 39 of the bill in ORS chapter 12, where various other statutes of limitation are found, but codified the rest of the ORLTA in ORS chapter 91 (later renumbered to

ORS chapter 90). *See Vollertsen*, 302 Or at 496 (so explaining). We have since explained that, when construing ORS 12.125, despite its codification in ORS chapter 12, the statute "must be read in the context of—and, indeed, as if it still were part of—the statute that now is codified at ORS chapter 90." *Waldner*, 345 Or at 541-42; *see also Vollertsen*, 302 Or at 496.[3]

In short, there is no indication that the legislature intended that the limitations period that it enacted as part of the ORLTA would be made part of ORS chapter 12. That organizational decision by the Office of Legislative Counsel was not a legislative act and has no interpretive import. We therefore reject the argument by plaintiffs and OTLA that the presence of ORS 12.125 within ORS chapter 12 is a sufficient reason to infer a discovery rule in that statute.[4]

That does not entirely resolve the question, of course. As we have noted, ORS 12.125 simply states that "[a]n action arising under a rental agreement or ORS chapter 90 shall be commenced within one year." It does not expressly tell us what starts the one-year clock. As we next explain, we conclude that the statute of limitations commences running when a rental agreement is allegedly breached or when an alleged violation of ORS chapter 90 has occurred.

Although the plaintiffs in this case happen to allege a violation of ORS chapter 90 (the ORLTA), the relevant statute

---

[3] Although the parties have not raised the issue, we observe that the Office of Legislative Counsel, in publishing the ORS, follows a current practice of including a note that expressly indicates when the placement of a statute in a particular chapter did not result from legislative action. *See, e.g.*, ORS 12.132 ("Note: 12.132 (Action arising out of real estate appraisal activity or appraisal review) was enacted into law by the Legislative Assembly but was not added to or made a part of ORS chapter 12 or any series therein by legislative action. See Preface to Oregon Revised Statutes for further explanation."). No such note accompanies ORS 12.125, but we are unaware whether Legislative Counsel's current practice was followed in the era when the ORLTA was enacted. In any event, the enactment history of ORS 12.125 was already established by this court in *Vollertsen*, which we have no cause to revisit here. We express no view as to whether, or how, the existence or absence of such a Legislative Counsel note might bear on the *Gaines* analysis in a future case.

[4] To put it another way, we conclude that ORS 12.125 is not "under the purview of ORS 12.010" as that phrase was used in *Rice*. As we have noted, *Rice* did not explain what it meant by that phrase, but, for the reasons discussed in this opinion, to the extent that *Rice* implicitly reasoned that statutes of limitation contained within ORS chapter 12 are incorporated by default into ORS 12.010, that reasoning cannot logically extend to a limitations period that exists in ORS chapter 12 as a result of an organizational decision by the Office of Legislative Counsel.

of limitations also applies to actions "arising under a rental agreement." The reference to a "rental agreement" is important contextual evidence concerning the legislature's intent as to when the statute of limitations would begin running. That is so because, at the time of the statute's enactment in 1973, this court had stated that the statute of limitations for breach of contract begins running at the time of breach. *See, e.g.*, *Seattle-First Nat'l Bk. v. Ore. Pac. Ind.*, 262 Or 578, 583, 500 P2d 1033 (1972) ("The normal inference is that the cause of action accrues at the time the breach of contract occurs.").[5] The general statute of limitations for contract actions is six years. ORS 12.080. The ORLTA imposes a shorter one-year limitations period for claims arising under rental agreements, in keeping with the expressed legislative desire for expeditious resolution of landlord-tenant disputes, but there is no indication that the legislature intended to depart from the principle that the limitations period in contract cases commences upon breach. Nor is there any reason to suppose that, within the same statute, the legislature intended to adopt a different commencement rule for statutory claims under the ORLTA than it did for contract claims. Thus, if the legislature intended (as we presume it did) that a claim for breach of a rental agreement must be brought within one year of the breach, it also likely intended that a statutory claim would be brought within one year of the event most analogous to the breach of an agreement—that is, the alleged act or omission constituting an ORLTA violation.

For the reasons discussed above, we reject plaintiffs' argument that ORS 12.125 contains a discovery rule. First, we disagree with plaintiffs' contention that the phrase "arising under" expresses a discovery rule. Viewed in context, that phrase in ORS 12.125 has no temporal meaning but, rather, operates to describe the sources of law that give rise to the limitations period. Thus, the text of the statute itself fails to express a discovery rule. The legislature's "failure to

---

[5] The limitations period for contract claims, ORS 12.080, is also found in ORS chapter 12. Thus, arguably, the long-observed principle that a contract action "accrues" upon breach is in tension with reading *Rice* to hold that limitation periods within ORS chapter 12 do not "accrue" until a claim is discovered. *Rice* did not address the fact that contract claims in Oregon have historically been understood to accrue at the time of breach. That is a further reason to be cautious in reading *Rice* to apply outside the tort context. For further discussion of this tension, which we have no need to resolve here, see *Romero v. Amburn*, 323 Or App 410, 523 P3d 1135 (2022).

use those words or make any apparent reference to the discovery of the injury in the text of the statute suggests that the legislature did not intend" to include a discovery rule, because the "legislature knows how to express a discovery rule when it desires to do so." *Gladhart*, 332 Or at 231, 234.

Second, although we have observed that a statute's failure to expressly state a discovery rule is not dispositive, the contextual arguments that plaintiffs make for inferring one in ORS 12.125 are unavailing. Plaintiffs give decisive weight to the fact that ORS 12.125 is found within ORS chapter 12. But, as discussed above, that fact can bear no weight at all in these circumstances because it is the product not of a legislative choice, but of an organizational and administrative decision by the Office of Legislative Counsel in the exercise of its authority under ORS 173.160.

Third, the context and history of ORS 12.125 support the conclusion that the legislature would have been aware, at the time of the statute's enactment, that the statute of limitations for breach of contract claims had historically been understood to commence at the time of breach, and that the legislature intended to adopt that rule for claims arising under ORS 12.125, irrespective of whether such claims were based on breaches of agreements or statutory violations.[6]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[6] We note that this case involves no allegation of fraudulent concealment of defendants' alleged violations, and thus presents no occasion to consider any possible tolling effect that such an allegation might have.