Argued and submitted May 14, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings December 31, 2008

Dave WALDNER,
Michelle Kasper, Jacob Lahmann
and Michelle Kasper, as Guardian Ad Litem for
Joshua Bush and Hanna Waldner,
Minors,
*Petitioners on Review,*

*v.*

Stephen STEPHENS,
*Respondent on Review.*

Stephen STEPHENS,
*Third-Party Plaintiff,*

*v.*

TRAN CO.,
an Oregon corporation,
*Third-Party Defendant.*

(CC 03C21165; CA A127595; SC S055351)

200 P3d 556

Robert K. Udziela, Beaverton, argued the cause and filed the brief for petitioners on review.

Thomas W. Brown, of Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Julie A. Smith.

Arthur C. Johnson, and Douglas G. Schaller, of Johnson, Clifton, Larson and Schaller, P.C., Eugene, filed the brief for *amicus curiae* Pamela J. Pearson.

GILLETTE, J.

## GILLETTE, J.

In this action alleging negligence and other claims, plaintiffs sought damages from their former landlord for various injuries that, they alleged, had resulted from unhealthful conditions in a dwelling that they rented from that landlord. On defendant's ORCP 21 A(8) motion, the trial court concluded that plaintiffs had failed to state a claim in common-law negligence, that the only claims that plaintiffs *had* pleaded were subject to the one-year statute of limitations set out in ORS 12.125 for "action[s] arising under a rental agreement or ORS Chapter 90 [(the Oregon Residential Landlord Tenant Act (ORLTA))],"[1] and that dismissal therefore was warranted because plaintiffs had not filed their action within that one-year limitations period. Plaintiffs appealed, arguing that they had pleaded a *common-law* negligence claim and that the relevant limitations period was the two-year period set out at ORS 12.110(1) for "injury to the person or rights of another, not arising on contract and not especially enumerated in [ORS chapter 12]." The Court of Appeals rejected that argument and affirmed. *Waldner v. Stephens*, 213 Or App 610, 162 P3d 342 (2007). Plaintiffs petitioned for review by this court, and we granted their petition to consider whether plaintiffs' complaint states a claim in common-law negligence and, if so, whether the trial court applied the wrong statute of limitations to that claim.

█      When we review a trial court's dismissal of a claim under ORCP 21 A(8), as we do here, we accept as true all well-pleaded allegations of fact and all reasonable inferences

---

[1] The ORLTA, originally enacted in 1973 and now codified at chapter 90 of the Oregon Revised Statutes, regulates residential landlord-tenant relations in Oregon. Of particular relevance here are: (1) ORS 90.320, which provides that landlords shall at all times maintain a rented dwelling unit in a "habitable condition" and defines unhabitability in fairly detailed terms; (2) ORS 90.360(2), which provides that, except in certain specified circumstances, tenants "may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or [the habitability requirements of] ORS 90.320"; and (3) ORS 90.125, which provides that "the remedies provided by this chapter shall be so administered that an aggrieved party may recover appropriate damages." In *Brewer v. Erwin*, 287 Or 435, 453, 600 P2d 398 (1979), this court held that "appropriate damages" under ORS 90.125 (designated at that time as ORS 91.725) would include "compensation for the loss of life or health and the accompanying costs, and not only for the economic value of any goods that may have been damaged or for the reduced rental value."

that may be drawn from them. *Scovill v. City of Astoria*, 324 Or 159, 164, 921 P2d 1312 (1996). The relevant allegations are contained in plaintiffs' third amended complaint,[2] which purports to assert a claim for common-law negligence based on certain conditions in plaintiffs' home.[3] The negligence claim alleged, among other things, that, in 1997, plaintiffs entered into a written agreement with defendant to rent a residential unit in a duplex that defendant owned; that, under the written agreement, defendant retained sole and exclusive control over the roof and exterior spaces of the building as well as sole and exclusive responsibility to repair those areas;[4] that, while plaintiffs occupied the unit, water and moisture intruded through the roof and exterior walls of the building and, ultimately, into the residence; that plaintiffs notified defendant of the water intrusions and of defects relating to that problem; that defendant inspected plaintiffs' residence and orally promised to make repairs; that, based on defendant's promise, plaintiffs continued to occupy and make rental payments for the unit; and that, as a result of the intrusion of water and moisture into the building, mold spores, fungi, bacteria, and related toxins invaded plaintiffs' unit, contaminating plaintiffs' personal property and causing them to develop serious medical problems.

---

[2] That is, the case as it comes to us concerns the trial court's dismissal of plaintiffs' third amended complaint. Plaintiffs' first amended complaint alleged negligence—defendant's "failure to exercise reasonable care of the rental property occupied by plaintiffs"—in very general terms. The trial court dismissed that first complaint on the ground that it failed to allege specific facts that established that defendant had "violated a duty owed to [plaintiffs] under Oregon common law." With the trial court's leave, plaintiffs filed a second amended complaint that added more detailed specifications of negligence. The trial court rejected the second amended complaint, stating that plaintiffs' new specifications of negligence expressly referred to duties imposed by the ORLTA, rather than the common law. Plaintiffs then filed the complaint that is at issue here, which includes even more specifications of negligence.

[3] The complaint also contained a claim for "Breach of an Agreement to Repair/ Make Habitable." It alleged that, in the course of their tenancy, plaintiffs had complained to defendant about the invasion of water and moisture; that defendant had observed the problem and had promised to make repairs; that, in reliance upon that representation, plaintiffs remained in, and continued to pay rent for, the residential unit; that defendant did not effectuate the promised repairs; and that, in consequence, plaintiffs were injured, as described in the text. Plaintiffs make no argument with respect to that claim to this court, and we do not discuss it further in this opinion.

[4] As we discuss later, plaintiffs also alleged that defendant had a duty to remedy a problem that was independent of the rental agreement.

The pleadings also contained other, more specific allegations of negligence, some of which used terminology drawn directly from the ORLTA:

"At said times and places, [defendant] was negligent and failed to exercise reasonable care in one or more of the following particulars:

"a. In failing to inspect, install, maintain or keep in good repair the roof, walls, flooring and other structural areas of the residence over which defendant maintained exclusive control, did not convey to plaintiffs as part of the leasehold, and prohibited plaintiffs from repairing;

"b. In failing to provide and maintain habitable premises by not keeping the premises safe for normal and reasonably foreseeable uses;

"c. In failing to prevent the invasion of water, moisture and * * * fungi, mildew, bacteria and other toxins;

"d. In neglecting or ignoring after notice from plaintiffs the intrusion of toxins, water, moisture, mold, and other harmful substances that invaded the premises;

"e. In failing to eliminate the toxic conditions of the property that defendant (1) caused, (2) allowed intentionally, or (3) allowed to exist in reckless disregard of the safety of others;

"f. In failing to provide adequate ventilation for the house;

"g. In failing to warn plaintiffs of the dangers associated with roof leaks, wet rot, and mold in houses;

"h. In failing to immediately take prompt or effective measures to protect plaintiffs from harm.

"At said times and places, [defendant] was the owner and landlord of the premises leased to plaintiffs. In his status as a landlord, defendant retains the duty to maintain the leased premises in habitable condition. The duty continues through the course of the tenancy. Defendant was negligent and failed to exercise reasonable care in one or more of the following particulars:

"a. In failing to provide and maintain a dwelling in a habitable condition in that the waterproofing and weather

protection of the roof and exterior walls, including windows and doors, was [*sic*] inadequate (ORS 90.320(a));

"b. In failing to provide and maintain habitable premises by not keeping the building safe for normal and reasonably foreseeable uses (ORS 90.320(f));

"c. In failing to provide and maintain habitable premises by not maintaining the walls and ceilings in good repair (ORS 90.320(h)); and

"d. In failing to provide and maintain habitable premises by not providing or maintaining appropriate ventilation in the dwelling (ORS 90.320(i))."

Defendant moved to dismiss plaintiffs' action in its entirety, arguing that all of the claims alleged were time barred under ORS 12.125, the one-year statute of limitations that applies to "action[s] arising under a rental agreement or [the ORLTA]." Defendant reasoned that, because plaintiffs' claims relied on defendant's status as plaintiffs' landlord and on the landlord/tenant relationship that existed between defendant and plaintiffs, they necessarily arose "under [the] rental agreement" that memorialized that landlord/tenant relationship. Defendant also argued that, because plaintiffs' negligence claim referred to various duties that are imposed on landlords by the ORLTA,[5] that claim "ar[ose] under * * *

---

[5] Defendant pointed primarily to ORS 90.320, which provides, among other things:

"(1) A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be consider unhabitable if it substantially lacks:

"(a) Effective waterproofing and weather protection of roof and exterior walls, including windows and doors;

"* * * * *

"(f) Buildings, grounds and appurtenances at the time of the commencement of the rental agreement in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"* * * * *

"(h) Floors, walls, ceilings, stairways and railings maintained in good repair;

"(i) Ventilating, air condition and other facilities and appliances * * * maintained in good repair if supplied or required to be supplied by the landlord."

[the ORLTA]" within the meaning of ORS 12.125. The trial court ultimately granted defendant's motion, holding that plaintiffs had failed to state a claim in common-law negligence but that, instead, their claims "arose under" provisions of the ORLTA and were time barred under ORS 12.125.

On plaintiffs' appeal, the Court of Appeals affirmed. *Waldner*, 213 Or App at 612. The court noted that the complaint alleged that the parties had entered into a rental agreement under which defendant retained sole and exclusive control of the roof, walls, and other structural areas of the duplex and had further alleged that defendant had a duty to plaintiffs, which arose out of plaintiffs' status as tenants, to "be certain that the portions over which defendant retained control were kept in a reasonably safe condition of repair, and to maintain the premises in a habitable condition." *Id.* at 617. The court then concluded that,

> "when read together, the above allegations make it clear that plaintiffs' claims are based on the relationship that 'arises' or originates from their rental agreement. In that light, we readily conclude that the legislature intended ORS 12.125 to apply to claims like those made by plaintiffs."

*Id.* The court also decided that, when the complaint alleged that defendant had promised to repair the premises and plaintiffs had stayed on in reliance on that promise, they once again were alleging a "rental agreement," albeit a new, oral one. Consequently, the court concluded, plaintiffs' alternative negligence theory—that defendant had assumed a duty to repair independent of any rental agreement—also "ar[o]se[ ] under a rental agreement" and was time barred under ORS 12.125. *Id.* at 618.[6]

Before this court, plaintiffs argue that, contrary to the views expressed by the trial court and the Court of Appeals, they have alleged a common-law negligence claim in their third amended complaint that does not "aris[e] under a

---

[6] Using the same reasoning, the Court of Appeals concluded that plaintiffs' second claim—for breach of a promise to repair/make habitable—also was time barred under ORS 12.125. *Waldner*, 213 Or App at 618-19. As noted above, plaintiffs do not challenge the Court of Appeals decision concerning the second claim, and we do not address that claim.

rental agreement or [the ORLTA]," and, thus, is not time barred under ORS 12.125. Plaintiffs contend, instead, that that claim is subject to the two-year statute of limitations set out at ORS 12.110(1), which applies to actions "for any injury to the person or rights of another, not arising in contract and not especially enumerated in [ORS chapter 12]."

Plaintiffs do not deny that their negligence claim in *some* broad sense relies on a rental agreement, in that their status as tenants and their tenant/landlord relationship with defendant would not exist without some form of rental agreement. But, they contend, the mere fact that a plaintiff and defendant are in a landlord/tenant relationship is not sufficient in itself to bring ORS 12.125 into play. They argue, and we agree, that *Vollertsen v. Lamb*, 302 Or 489, 732 P2d 486 (1987), and *Jones v. Bierek*, 306 Or 42, 755 P2d 698 (1988), disposed of that notion.[7]

The Court of Appeals' contrary view in this case was based—understandably, we think—on plaintiffs' allegation that, *under the written rental agreement,* defendant "retained sole and exclusive control and sole and exclusive responsibility to repair" the exterior spaces of the dwelling.[8] The court appeared to conclude that, because plaintiffs' negligence claim identified the written rental agreement as a source of defendant's duty to repair the exterior spaces of the dwelling

---

[7] In *Vollertsen,* a landlord brought an action against his former tenants for "waste" more than one year after the alleged waste occurred. This court considered, but rejected the tenants' contention that the action was time barred under ORS 12.125, because that statute applies to all residential landlord and tenant disputes. The court noted that the landlord's claim relied on ORS 105.805 and not the ORLTA, and that he had not pleaded his claim "as an attempt to enforce the rental agreement."

In *Jones,* the plaintiff sued her landlord in negligence when she fell on an inadequately lighted stairway and was injured. Confronted with the defendant's contention that the plaintiff's claim was time barred under ORS 12.125, this court listed and considered four different possible meanings of that statute, including the possibility that "the legislature intended to impose a one-year limitation on all disputes between a landlord and a tenant, regardless of the nature of the dispute." *Jones,* 306 Or at 44. The court rejected that interpretation out of hand, as failing to capture the concept of a claim "arising under" a rental agreement or the ORLTA. *Id.*

[8] The rental agreement provided that "[m]anagement will make necessary repairs to the exterior, with reasonable promptness, after receipt of written notice from resident." (Emphasis omitted.)

and thereby rectify the water invasion problem, their negligence claim necessarily "arose" under that agreement.

■      A brief summary of the present state of the common law of landlord-tenant liability is appropriate to assist our explanation of why, in our view, the Court of Appeals' conclusion was not correct. First, we must acknowledge that this court's view of the common law in this area has changed over time and that, even taking that evolution into account, our cases may not have been entirely consistent. Still, we can identify at least one common-law principle that is relevant to the case at hand. Specifically, we can say that the common law of Oregon recognizes that a landlord has a duty to maintain areas of the rented premises over which he or she retains control in a reasonably safe condition, and may be found liable both to tenants and to invitees for physical injury caused by an unsafe condition arising in such areas of the premises, if the landlord knew or should have known about the unsafe condition and could have made the condition safe.[9] *See generally Woolston v. Wells*, 297 Or 548, 687 P2d 144 (1984) (discussing instructions in action by visitor to apartment building against landlord for injuries sustained when visitor fell on stairway that was under control of landlord); *Pritchard v. Terrill*, 189 Or 662, 222 P2d 652 (1950) (action by tenant against landlord for injuries sustained when he fell on stairway that was under control of the landlord); *Lyons v. Lich*, 145 Or 606, 610, 28 P2d 872 (1934) (owner of apartment house had duty toward occupants and guests to see that portion of the premises over which the owner retained control was in reasonably safe condition); *Massor v. Yates*, 137 Or

---

[9] In *Fazzolari v. Portland School District No. 1J*, 303 Or 1, 734 P2d 1326 (1987), this court introduced a general "foreseeability" formula to replace traditional concepts of duty, breach, and causation, as those concepts were used in negligence cases, when determining whether a case required resolution of facts by a jury. *Fazzolari* stated, however, that that general foreseeability formula applied *unless* the parties "invoke a status, a relationship, or a particular standard of conduct that creates, defines or limits the defendant's duty." *Id.* at 17. This court since has indicated that there are distinct standards of conduct—generally set out in the *Restatement (Second) of Torts*—that are relevant to the question of a landlord's legal duty to a tenant. *See, e.g., Coulter Property Management, Inc. v. James*, 328 Or 164, 170-75, 970 P2d 209 (1998) (discussing *Restatement (Second) of Torts* § 358); *Park v. Hoffard*, 315 Or 624, 329-32, 847 P2d 852 (1993) (discussing *Restatement (Second) of Torts* § 379A); *Bellikka v. Green*, 306 Or 630, 643-47, 762 P2d 997 (1988) (discussing *Restatement (Second) of Torts* § 356).

569, 3 P2d 784 (1931) (where landlord retained control over portion of leased premises for use in common by different tenants, landlord had duty to keep that area in reasonably safe condition and was liable for personal injury resulting from his failure in that respect). *See also Restatement (Second) of Torts* § 360.[10]

Plaintiffs' negligence claim asserts a violation of common-law duties. For example, in paragraph 19 of the third amended complaint, plaintiffs allege that

"defendant had a duty to plaintiffs *arising out of plaintiffs' status as tenants* which duty included but was not limited to defendant exercising ordinary care for plaintiffs' protection; to be certain that the *portions of the premises over which defendant retained control* were kept in a reasonably safe condition of repair; and to maintain the premises in a habitable condition."

(Emphasis added.)

Similarly, in paragraph 13, the third amended complaint alleges that defendant had a duty to repair that was *independent of* the rental agreement:

"Defendant had a *duty to repair and maintain those portions of the premises over which he exercised sole and exclusive control*, and to take steps necessary to protect plaintiffs from harm arising in or from those areas. *Defendant inspected the water intrusion and thereafter assumed the duty to remediate the water and moisture problem independent of any obligation defendant retained pursuant to the rental agreement.* Defendant failed to do so and further failed to effectuate repairs after notice of the entry of water,

---

[10] *Restatement (Second) of Torts* § 360 (1974) provides:

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee * * * for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

Although this court never has explicitly adopted or rejected section 360 as a statement of common-law landlord-tenant liability in Oregon, the court's common-law landlord-tenant cases appear to be consistent with that statement of the law.

and the effects of moisture entering the residential portion of the dwelling."

(Emphasis added.)

As noted, the Court of Appeals suggested that any claims arising out of those allegations "arose under a rental agreement" because the rental agreement provided that the landlord maintained control of the exterior of the premises. But a plaintiff in a common-law action must identify, allege, and prove that the pertinent events occurred on *the portion of the premises over which the landlord maintains control*. It follows, we think, that the mere fact that a plaintiff proves that essential fact by pointing to a term in a lease agreement does not mean that the common-law *action* "arises under" that agreement.

The Court of Appeals further suggested that the allegations of plaintiffs' complaint "arose under a rental agreement" because plaintiffs alleged that a new, oral agreement was formed when defendant inspected the premises and orally promised to make repairs, and when, based on that promise, plaintiffs stayed on and continued to make rental payments.[11] However, it is clear to this court that, although plaintiffs *elsewhere* pleaded facts that would establish the existence of an oral agreement of that sort, and that they attempted to use the alleged oral agreement to establish a basis for certain of their other theories of recovery, plaintiffs intended to (and did) plead, in paragraphs 13 and 19, that defendant had a duty to repair that existed wholly apart from any written *or* oral agreement. According to plaintiffs' pleadings, that duty arose out of defendant's landlord/tenant relationship with plaintiffs and upon his acquisition of information showing that a dangerous condition had arisen on a portion of the property over which he (defendant) exercised exclusive control.

Although we have rejected the Court of Appeals' reading of the complaint, the possibility remains that, under

---

[11] The Court of Appeals pointed to paragraph 8 of the third amended complaint, where plaintiffs alleged that, after inspecting water damage in plaintiffs' residence, defendants "promised to effectuate repairs" and that, "based upon defendant's representations that repairs would be forthcoming, plaintiffs remained on the premises and continued to make rental payments."

some *other* theory, the negligence claim that plaintiffs pleaded in paragraphs 13 and 19 (and, perhaps, elsewhere in the complaint) "ar[o]se[ ] under a rental agreement or [the ORLTA]." Defendant's theory in that regard is that, because all of plaintiffs' allegations of negligence rely in some sense on *duties* that were imposed on defendant by his rental agreement with plaintiffs or on landlords in general by the ORLTA, plaintiffs' negligence claim "arises under" either the ORLTA or the rental agreement within the meaning of ORS 12.125.

■■ This court has stated on more than one occasion that the ORLTA does not supersede the common law of personal injury liability between a landlord and a tenant, and that a tenant may bring both common-law negligence claims and claims under the ORLTA against his or her landlord in the same action. *See, e.g.*, *Davis v. Campbell*, 327 Or 584, 592, 965 P2d 1017 (1998) (stating proposition); *Bellika v. Green*, 306 Or 630, 638, 762 P2d 997 (1988) (same). We have explained that conclusion in terms of a "general rule," recognized in *Brown v. Transcon Lines*, 284 Or 597, 610, 588 P2d 1087 (1978), and other cases that,

> "if a statute which provides for a new remedy shows no intention to negate, either expressly or by necessary implication, a pre-existing common law remedy, the new remedy will be regarded as merely cumulative rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy."

*See also Holien v. Sears, Roebuck and Co.*, 298 Or 76, 91-97, 689 P2d 1292 (1984) (applying general rule and holding that, even when employment discrimination statute and common law of wrongful discharge provide different procedures and remedies, statutory remedy and wrongful discharge claim may coexist in same complaint).

We return, then, to defendant's present theory— that, regardless of plaintiffs' intent to plead a claim in common-law negligence, the one-year statute of limitations at ORS 12.125 applies to that claim because the claim is based on the alleged breach of a duty that is addressed by the rental agreement or the ORLTA. Defendant purports to base that theory on the "plain meaning" of ORS 12.125. He argues:

"Under its plain terms, ORS 12.125 applies to all claims 'arising under' a rental agreement or the RLTA, regardless of the label the plaintiff chooses to give to his or her claim. Put differently, properly construed, a claim 'arises under' a rental agreement or the RLTA, and is therefore subject to the one-year limitation in ORS 12.125, *so long as it is based on a breach of a duty that is specifically addressed in one of those two sources, even if the complaint does not expressly rely on either as the source of that duty.*"

(Emphasis added.)

Defendant arrives at that "plain meaning" of ORS 12.125 by subjecting the statute to the analytical process described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). He contends that the legislature's intention is clear from text and context alone. In that regard, defendant notes, first, that the provision is "broadly written" in that it refers to both the ORLTA *and* rental agreements and does not limit its scope to actions "for" breach of the rental agreement or provisions of the statute. Defendant then examines the ordinary dictionary meanings of the terms "arise" and "under," and purports to find in those words meanings that, when the words are used together, "support the conclusion that a claim is subject to ORS 12.125 if the claim is connected in some way to a specific term of the rental agreement or a specific provision of the [O]RLTA." Defendant then "restates" that conclusion in the following terms: "For purposes of ORS 12.125, plaintiffs' action 'arises under' the rental agreement or the [O]RLTA if there is some nexus, (*i.e.*, relationship) between the alleged 'duty' on which the action is based and a particular term or provision of one or both of those two sources."

There is an obvious problem with defendant's textual analysis: By the clear terms of ORS 12.125, it is the *action* that must arise under the statute or rental agreement: it is not enough that the ORLTA sections or the rental agreement terms on which a plaintiff relies parrot a "duty" that the common law already recognizes. Furthermore, there is no textual basis for saying that the action must be connected to "a particular term or provision" of the ORLTA or the rental agreement. The provision refers to both sources as undivided wholes.

In fact, we think that the text of ORS 12.125 suggests a different interpretation than the one that defendant offers. Combining the ordinary meaning of "arise" ("to originate from a specified source," "to come into being"[12]) and "under" ("in accordance with"[13]), we think that the phrase "action arising under a rental agreement or [the ORLTA]" is most naturally read as applying when the action *itself* is authorized by, or brought in accordance with, one of those two sources.[14] At least on its face, the provision does not support defendant's sweeping interpretation, which would have all landlord/tenant disputes subsumed under ORS 12.125.

Of course, *PGE* instructs us to consider context as well as text at this stage of our analysis. *PGE*, 317 Or at 611. Plaintiffs point to *Jones* as relevant context that confirms their view of the scope of ORS 12.125—*i.e.*, that it applies only to landlord-tenant claims brought directly under the ORLTA. In that case, a woman was injured when she fell on a poorly lighted common stairway in her apartment building. She filed an action against her landlord, alleging common-law negligence and violation of a city ordinance pertaining to lighting. The landlord moved to dismiss, arguing that the complaint "arose under" the ORLTA and was untimely because it had not been filed within the one-year period provided in ORS 12.125. The trial court granted the landlord's motion, but the Court of Appeals reversed, holding that the plaintiff had a common-law claim that was independent of the rental agreement and the ORLTA. *Jones v. Bierek*, 88 Or App 11, 743 P2d 1153 (1987).

On review, this court affirmed the Court of Appeals decision. *Jones*, 306 Or at 44. The court acknowledged that the ORLTA imposed a duty on landlords to keep electrical lighting in "good working order," that a landlord's noncompliance with that duty may give rise to tenant's claim for damages under that statute, and that such statutory claims must

---

[12] *Webster's Third New Int'l Dictionary* 117 (unabridged ed 2002).

[13] *Id.* at 2487.

[14] In other words, when ORS 12.125 refers to *actions* that arise under the ORLTA, it speaks not just to the landlord's *duties*, listed at ORS 90.320, but to the provisions in that statute that imply a right of action by, for example, describing a landlord's and tenant's "remedies" for various violations, in terms of "damages," "injunctive relief," and the like.

be filed within a shorter (one-year) period. But the court noted that the plaintiff had alleged violation of a city ordinance and common-law negligence, the latter claim being based on the theory that the landlord had provided inadequate lighting in an area "where the landlord would be liable for unsafe conditions to other persons who lawfully used the stairway besides tenants." *Id.* at 45. The court rejected the defendant's suggestion that the ORLTA's shorter limitations period applied to the plaintiff's claims. The court was not persuaded that the legislature intended the ORLTA to be the exclusive source of a tenant's remedies against a landlord, or that it intended to allow landlords "to use [their] own noncompliance defensively so as to bar actions that anyone other than a tenant could continue to commence after one year, merely because the defendant happens to be the injured party's landlord." *Id.* at 45-46.

*Jones* appears to reject defendant's view that the legislature intended the one-year limitations period set out at ORS 12.125 to apply to *any* claim by a tenant against a landlord that alleges a breach of a duty that the ORLTA also addresses. It suggests, instead, that ORS 12.125 applies only to landlord-tenant claims brought *directly* under the ORLTA.

A final piece of contextual evidence, drawn from a discussion of the history of ORS 12.125 in *Vollertsen*, helps make our point. In *Vollertsen*, this court observed that ORS 12.125 originally was enacted as part of the 1973 statute now known as the Oregon Residential Landlord and Tenant Act, and that it then provided that "[a]n action arising under a rental agreement or sections 1 to 33 of this Act shall be commenced within one year." 302 Or at 495 (quoting and describing Or Laws 1973, ch 559, § 39). The court further observed that Legislative Counsel moved the provision to chapter 12 during the process of compiling the 1973 statutes for inclusion in the Oregon Revised Statutes. *Id.* at 496. The court noted that, in light of that history, there was no basis for suggesting that the terms used in ORS 12.125 (and particularly the term "rental agreement") meant anything other than what they meant in the specific context of the ORLTA. *Id.*

By the same logic, we think that *all* of ORS 12.125 must be read in the context of—and, indeed, as if it still were

part of—the statute that now is codified at ORS chapter 90. Given that that statute explicitly provides for damages and other remedies when a tenant or landlord fails to comply with either the rental agreement or requirements imposed on them elsewhere in the statute,[15] we think that it is likely that, when the 1973 Legislative Assembly provided a one-year limitations period for "actions arising under a rental agreement or sections 1 to 33 of this Act," it was referring to the set of claims that the ORLTA explicitly authorizes.

■ In the end, we hold that it is clear from the text and context of ORS 12.125 that, when the legislature chose to apply a one-year statute of limitations to "actions arising under the rental agreement or [the ORLTA]," it did not intend to sweep into that category all actions, including common-law actions, that merely bear some nexus to the relationship between landlords and tenants under a rental agreement or the ORLTA. We read the one-year limitations period at ORS 12.125 as applying only to claims that are directly authorized by the ORLTA, *i.e.*, claims that seek damages or injunctive relief *as provided in the ORLTA* for a violation of either the rental agreement or some requirement

---

[15] For example, ORS 90.360 sets out various tenant remedies, providing, in part:

"(1)(a) Except as provided in this chapter, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with ORS 90.320 or 90.730, the tenant may [terminate the rental agreement with 30 days' notice].

"* * * * *

"(2) Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS 90.320 or 90.730."

Similarly, ORS 90.401 provides:

"Except as provided in this chapter:

"(1) A landlord may pursue any one or more of the remedies set forth in ORS 90.342, 90.394, 90.396 and 90.398 [all providing for termination of rental agreement as provided in eviction statutes for various acts or omissions by tenant], 90.403 [taking possession from unauthorized sublettor as provided in eviction statutes] and 90.405 [termination of rental agreement as provided in eviction statutes], simultaneously or sequentially.

"(2) In addition to the remedies provided in ORS 90.342, 90.394, 90.396 and 90.398, a landlord may recover damages and obtain injunctive relief for any noncompliance by the tenant with the rental agreement or ORS 90.325 or 90.740."

imposed on landlords or tenants only by a provision of the ORLTA.

The common-law negligence claim that we already have identified in plaintiffs' complaint does not rely on the ORLTA as direct authority in the sense we have described. It is not subject to the statute of limitations set out at ORS 12.125 but, instead, is limited by the statute of limitations for actions for "an injury to the person or rights of another, not arising on contract and not especially enumerated in [ORS chapter 12]." ORS 12.110(1). Although it is true that the complaint is laced with references to the ORLTA and the rental agreement that are not relevant to that common-law claim, and which may have been susceptible to a timely motion to strike, ORCP 21 E, or a motion to make more definite and certain, ORCP 21 D, the inclusion of those allegations was not a permissible ground for dismissal of plaintiffs' negligence claim under ORCP 21 A. The trial court erred in concluding otherwise.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.